UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY C. SPENCER,

        Petitioner,

v.                                                    Case No. 1:19-cv-10112
                                                    Honorable Thomas L. Ludington

SHERMAN CAMPBELL,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Anthony C. Spencer, a state inmate at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner challenges his plea-based convictions for six felonies committed in St. Clair County, Michigan. He seeks habeas relief on the basis that his two guilty pleas were involuntary, unknowing, and unintelligent and, therefore, the state court abused its discretion by denying his request to withdraw one of the guilty pleas. *Id*. at PageID.8. Petitioner also alleges that his trial attorney was ineffective for failing to investigate and raise an insanity defense. *Id*.

The State filed an answer in opposition to the habeas petition. ECF No. 7. It urges the Court to deny the habeas petition because Petitioner's claim about his guilty plea is not cognizable on habeas review, his claim about trial counsel is waived, and both claims lack substantive merit. *Id*. at PageID.29. For the reasons stated below, the Court agrees that Petitioner's claims do not warrant habeas corpus relief. Accordingly, the habeas petition is denied. The Court also declines to grant a certificate of appealability, but the Court grants leave to proceed *in forma pauperis* on appeal.

# I.

## A.

In St. Clair County Circuit Court case number 17-2072,[1] Petitioner was charged with first-degree home invasion, Mich. Comp. Laws § 750.110a(2), unlawful imprisonment, Mich. Comp. Laws § 750.349b, unarmed robbery, Mich. Comp. Laws § 750.530, and unlawfully driving away a motor vehicle ("UDAA"), Mich. Comp. Laws § 750.413. The charges arose from an incident on April 28, 2017, when Petitioner broke into a widow's residence, stole some items from the 78-year-old homeowner, tied the homeowner to railings in the bathroom, and drove away in her deceased husband's vehicle without her permission. On August 8, 2017, Petitioner pleaded guilty, as charged, in Michigan's 72nd District Court. ECF No. 8-3 (8/8/17 Felony Plea Tr.). There was no plea agreement, and Petitioner acknowledged that his criminal history included at least three prior felony convictions. The district court judge accepted Petitioner's plea and opined that the plea was entered knowingly, voluntarily, and accurately. *Id*. at PageID.104.

In St. Clair County case number 17-2073, Petitioner was charged with breaking and entering a building with intent to commit a larceny, Mich. Comp. Laws § 750.110(1), and stealing or retaining a financial transaction device without consent, Mich. Comp. Laws § 750.157n(1). Those charges arose from an incident on the night of April 29, 2017, when Petitioner broke into a store in Port Huron Township and took some credit cards and a chain saw without permission. As in his other case, Petitioner pleaded guilty, as charged, in 72nd District Court on August 8, 2017. In return for Petitioner's plea in the case, the prosecution agreed to reduce the habitual-offender

---

[1] For ease of reference, the Court is using the St. Clair County Circuit Court case numbers in this opinion, even though some of the proceedings occurred in Michigan's 72nd District Court in St. Clair County.

notice from habitual offender, fourth offense, to habitual offender, second offense. ECF No. 8-4 at PageID.114-115 (8/8/17 Felony Plea Tr., at pp. 9-10). The district court judge bound the case over to St. Clair County Circuit Court, and on September 18, 2017, the state circuit court sentenced Petitioner. The court ordered Petitioner to serve four to fifteen years in prison for breaking and entering the store and four to six years for stealing the financial transaction device. ECF No. 8-6 at Page ID.158 (9/18/17 Disposition Tr. at p. 7.)

Petitioner was represented by the same attorney in both St. Clair County cases. However, on the date set for sentencing in case number 17-2072, his attorney moved to withdraw from the case before Petitioner could be sentenced in that case. The attorney explained that, because of the negative comments Petitioner had made about the attorney at his sentencing in case number 17-2073, the attorney did not think he could represent Petitioner at his sentencing in case number 17-2072. ECF No. 8-7 at PageID.162–63 (10/2/17 Mot. Hr'g Tr. at pp. 3-4.)

The trial court allowed the attorney to withdraw and then appointed a different attorney, who filed a motion to withdraw Petitioner's guilty plea in case number 17-2072. At a hearing on October 23, 2017, the state trial court denied the motion and sentenced Petitioner as a fourth habitual offender. The court ordered Petitioner to serve a term of twenty-five to fifty years in prison for the home-invasion conviction, the unlawful imprisonment conviction, and the unarmed robbery conviction. The court also sentenced Petitioner to a concurrent term of ten to fifteen years in prison for the UDAA conviction. ECF No. 8-8 at PageID.192–94 (10/23/17 Mot. and Sentence Hr'g Tr. at pp. 24-26.)

Petitioner appealed only his convictions in case number 17-2072.[2] He argued that he was entitled to withdraw his guilty plea because his plea was not voluntary, knowing, and intelligent, and the trial court abused its discretion in denying his request to withdraw the plea. He also claimed that he was deprived of effective assistance of counsel in pleading guilty because trial counsel failed to investigate an insanity defense. ECF No. 8-11 at PageID.232–33 (Defendant/Appellant's Application for Leave to Appeal.) The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented" to the court. *See People v. Spencer*, No. 343512 (Mich. Ct. App. May 29, 2018).

Petitioner raised the same issues in a pro se application for leave to appeal in the Michigan Supreme Court. ECF No. 8-12 at PageID.316–17. On December 4, 2018, the state supreme court denied leave to appeal because it was not persuaded to review the issues. *See People v. Spencer*, 919 N.W.2d 778 (Mich. 2018).

**B.**

On January 11, 2019, Petitioner filed his habeas corpus petition. He raises the same claims that he presented to the state courts during the direct appeal in circuit court case number 17-2072. Specifically, he contends that he is entitled to withdraw his plea because his plea was not voluntary, knowing, and intelligent and the trial court abused its discretion when it denied his request to withdraw the plea. Petitioner also claims that his trial attorney deprived him of effective assistance by failing to investigate and raise a defense of insanity. ECF No. 1 at PageID.8.

---

[2] Petitioner initially may have applied for leave to appeal in case number 17-2073, but the state court's register of action for that case shows that orders granting dismissal of an appeal and vacating appointment of counsel were entered on March 15, 2018, and March 21, 2018. *See* Register of Actions, ECF No. 8-2, PageID.86.

The State argues in its answer to the habeas petition that: (1) habeas relief is not warranted on Petitioner's claim about his guilty plea because the claim lacks merit and is not cognizable on habeas review; and (2) habeas relief is not warranted on Petitioner's ineffective assistance of counsel claim because the claim lacks merit and is waived. ECF No. 7 at PageID.29.

The State did not discuss Petitioner's convictions for breaking and entering a building and stealing or retaining a financial transaction device, because Petitioner did not exhaust state remedies for those convictions, as required by 28 U.S.C. § 2254(b)(1). *See id*. at PageID.31 n.1. Federal district courts, however, may deny a habeas petition despite the failure to exhaust state remedies, 28 U.S.C. § 2254(b)(2), and none of Petitioner's claims warrant habeas corpus relief. The Court, therefore, proceeds to address both of Petitioner's state-court cases.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to relief on any claim adjudicated on the merits in state-court proceedings unless the adjudication (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," as determined by the United States Supreme Court, or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotations and citations omitted).

To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*

*v. Richter*, 562 U.S. 86, 103 (2011). That is "a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)). When a claim was not adjudicated on the merits in state-court proceedings, the federal court applies *de novo* review to a petitioner's habeas claim. *Linscott v. Rose*, 436 F.3d 587, 592 (6th Cir. 2006).

### III.

### A.

Petitioner alleges that he is entitled to withdraw his guilty plea because his plea was not voluntary, knowing, and intelligent and because the trial court abused its discretion when denying his request to withdraw his plea. Petitioner did not ask the state trial court for permission to withdraw his guilty plea in case number 17-2073, and he has not responded to the State's argument that he did not exhaust state remedies for his challenge to the convictions in that case. Thus, to the extent Petitioner is claiming that the state trial court abused its discretion by not permitting him to withdraw his guilty plea in case number 17-2073, the claim is abandoned.

Furthermore, whether the state trial court erroneously applied state law and abused its discretion in case number 17-2072, as Petitioner suggests in his habeas petition, the question is not a cognizable issue on habeas review. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Additionally, "[a] defendant does not have an absolute right to withdraw a guilty plea." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006); *accord United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012); *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005).

The only question is whether the state appellate court's rejection of Petitioner's challenge to his guilty plea in circuit court case number 17-2072 was contrary to, or an unreasonable application of, Supreme Court precedent.

1.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25,31 (1970)). "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976) (internal citation omitted). And "a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)).

In short, to be voluntary and knowing, a guilty plea must be "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970). Courts must consider all the relevant circumstances when determining whether a plea was voluntary. *Id*. at 749. Among the factors to be considered are whether the defendant appreciated the consequences of his waiver of constitutional rights, whether he waived his rights without being coerced to do so, whether he understood the rights that he was surrendering by pleading guilty, and whether he understood the essential elements of the offenses to which he pleaded guilty. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408–09 (6th Cir. 2009).

**2.**

Petitioner maintains that his guilty plea was invalid because he did not have an opportunity to explore any defenses and that he did not have the mental state necessary to be found guilty of the crimes. But he was evaluated for competency to stand trial and criminal responsibility for the crimes, and the licensed psychologist who interviewed Petitioner stated in a written report that Petitioner was competent to stand trial in case number 17-2072. ECF No. 8-11 at PageID.270–76 (7/24/17 Center for Forensic Psychiatry Report.) The psychologist also determined that Petitioner was not legally insane at the time of the alleged crimes. *Id*. at PageID.277–89. Although the psychologist thought that Petitioner was functioning within the low average range of intellectual ability, there was nothing in Petitioner's presentation to the psychologist to suggest that he was intellectually disabled. *Id*. at PageID.287. According to the psychologist, Petitioner seemed to appreciate the nature and quality of his conduct at the time of the alleged offenses, and he was able to conform his conduct to the requirements of the law, if he chose to do so and exerted an effort in that regard. *Id*. at PageID.288-89. The psychologist concluded that Petitioner was not intellectually disabled or mentally ill at the time of the alleged offenses and, therefore, he was not legally insane for purposes of the alleged offenses. *Id*. at PageID.289.

Fifteen days after the psychologist issued her report, Petitioner appeared in court, and his attorney stated that he had no objection to the psychologist's report in case number 17-2072. ECF No. 8-3 at PageID.90 (8/8/17 Felony Plea Tr.)[3] During Petitioner's subsequent colloquy with the state district court, Petitioner stated that he understood he could be sentenced up to life imprisonment on each of the four felony counts due to his status as a fourth habitual offender. *Id*.

---

[3] In case number 17-2073, Petitioner also stipulated that he was competent to stand trial. ECF No. 8-4 at PageID.108–10 (8/8/17 Felony Plea Tr. at pp. 3-5).

at PageID.91. He stated that he had a chance to review the statement-of-rights form before signing it and that he understood he was giving up those rights by pleading guilty. *Id*. at PageID.91–92. He assured the court that no one had threatened him or promised him anything to make him plead guilty. *Id.* at PageID.93. He had no questions for the court, and he stated that he believed he was guilty and that he wished to plead guilty. *Id*.

Petitioner also provided a factual basis for his plea after expressing concern for the victim who was seated in the courtroom. *Id*. at PageID.93–103. He said that he could not remember some things, that everything seemed foggy during the incident, and that he had been scared, confused, and unaware of what he was doing; but he readily admitted that he "did some wrong stuff" and "messed up pretty good." *Id*. at PageID.99–103.

At the subsequent hearing on Petitioner's motion to withdraw his guilty plea, his attorney argued that there was no benefit to pleading guilty, that Petitioner had not been advised of the possibility of consecutive sentences, and that Petitioner had struggled to establish a factual basis for his plea at the plea proceeding. The attorney also pointed out that Petitioner had participated in special education classes and that he had sustained a closed head injury in 1992. The attorney concluded by arguing that Petitioner should be permitted to explore a defense of legal insanity or guilty, but mentally ill. ECF No. 8-8 at PageID.172–74 (10/23/17 Motion and Sentence Tr.).

The circuit court judge, however, agreed with the prosecutor that there was no basis for concluding that Petitioner's plea was unknowing, involuntary, or inaccurate. The judge opined that it was a clear case of buyer's remorse and that Petitioner certainly knew what he was getting into

when he pleaded guilty, given his experience with the criminal justice system and his longstanding professional relationship with his former attorney. *Id*. at PageID.177–80.[4]

Petitioner responded that the case was based on lies and that the probation officer and the court were fabricating things. *Id*. at PageID.179. But Petitioner's "solemn declarations" at the plea proceeding "carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and he stated at the plea proceeding that he believed he was guilty and that he wished to plead guilty. Petitioner also received notice of the charges against him, and he had no trouble understanding the charges. He claimed to understand that he was waiving certain constitutional rights by pleading guilty and that he could be sentenced to life imprisonment. He denied being threatened or promised anything to induce his plea, and he demonstrated his ability to understand the proceedings when he responded to questions addressed to him by the prosecutor, defense counsel, and the trial court.

The record indicates that Petitioner made a voluntary and intelligent decision to plead guilty and that he was capable of choosing among the alternative courses of action available to him. Therefore, the state appellate court's rejection of Petitioner's claim for lack of merit was objectively reasonable, and Petitioner is not entitled to relief on his first claim.

**B.**

**1.**

Petitioner's remaining claim is that he was deprived of effective assistance of trial counsel because his attorney failed to investigate and raise an insanity defense. This claim is dubious because

---

[4] Petitioner's criminal history included six juvenile adjudications, twenty-one misdemeanor convictions as an adult, and nine felony convictions. ECF No. 8-6 at PageID.156 (9/18/17 Disposition Tr*.,* at p. 5).

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 771 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, to the extent Petitioner's trial attorney "rendered ineffective assistance when he . . . failed to pursue an insanity defense [or] failed to file a motion for an independent examination to determine criminal responsibility, . . . those shortcomings were 'irrelevant to the constitutional validity of the conviction' based on Petitioner's guilty plea." *Watkins v. Campbell*, 182 F. Supp.3d 727, 735 (W.D. Mich. 2016) (quoting *Haring v. Prosise*, 462 U.S. 306, 321 (1983)).

If Petitioner is alleging that his attorney's advice to plead guilty constituted ineffective assistance, Petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-part test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill*, 474 U.S. at 58.

In guilty plea cases, the first part of the *Strickland* test requires showing that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Id*. at 56-59 (citing *Tollett v. Henderson*, 411 U.S. 258 (1973), and *McMann v. Richardson*, 397 U.S. 759 (1970)). The second or "prejudice" component of the test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. at 59. "[T]he defendant must show . . . a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*.

**2.**

In deciding whether trial counsel was ineffective for advising Petitioner to forego an insanity defense and instead to plead guilty, the Court looks to state law on the defense of insanity. In Michigan, legal insanity is an affirmative defense, which the defendant must prove by a preponderance of the evidence. Mich. Comp. Laws § 768.21a(1), (3). To establish that a defendant was legally insane when he committed a crime, the defendant must prove that, as a result of mental illness or having an intellectual disability, he lacked a substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Mich. Comp. Laws § 768.21a(1).

As noted above, a forensic psychologist determined in both of Petitioner's cases that Petitioner was competent to stand trial. In case number 17-2072, the forensic psychologist also determined that Petitioner did not meet the definition of legal insanity,[5] and Petitioner did not contest the psychologist's reports.

Petitioner subsequently admitted at his plea proceedings in both St. Clair County cases that what he had done was wrong. ECF No. 8-3 at PageID.100 (8/8/17 Felony Plea Tr. at p. 14); ECF No. 8-4 at PageID.126 (8/8/17 Felony Plea Tr. at p. 21). Although he informed the victim in the home invasion case that he was out of his mind when he committed the crimes due to his addiction to drugs,[6] "[a]n individual who was under the influence of voluntarily consumed or injected . . . controlled substances at the time of his or her alleged offense is not considered to have been legally

---

[5] In case number 17, 2073, the parties and the district court judge agreed that Petitioner had been found competent to stand trial, but there was no mention of whether Petitioner had been found criminally responsible in that case. ECF No. 8-4 at PageID.108–10 (8/8/17 Felony Plea Tr. at pp. 3-5). And because the psychologist's report in that case is not part of the record before the Court, the Court is unable to say whether Petitioner was found criminally responsible for the breaking and entering and the theft of a financial transaction device at issue in case number 17-2073.
[6] ECF No. 8-8 at PageID.186 (10/23/17 Mot. and Sentence Tr., at p.18).

insane solely because of being under the influence of . . . controlled substances." Mich. Comp. Laws § 768.21a (2).

The forensic psychologist, moreover, concluded from psychological testing that Petitioner had over-reported psychopathology to feign difficulties and that Petitioner's behavior was associated with his substance abuse rather than a psychiatric disorder. ECF No. 8-11 at PageID.288 (7/24/17 Center for Forensic Psychiatry Report at p. 12). Defense counsel could have reasonably concluded from the report and from other facts in the case that Petitioner did not have a viable insanity defense in either one of his two cases. Therefore, defense counsel's advice to Petitioner to plead guilty, rather than go to trial and assert an insanity defense, did not amount to deficient performance. Although defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland*, 466 U.S. at 691, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste," *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Defense counsel's advice also did not prejudice Petitioner because Petitioner has not shown a reasonable probability that, but for counsel's allegedly deficient performance, he would not have pleaded guilty and would have gone to trial. In fact, he has not requested a trial; he merely wants the Court to remand his case to the state trial court for an evaluation of competency and criminal responsibility and a hearing on his competency. ECF No. 1, PageID.13 (Pet.). Petitioner's claim about trial counsel fails, and the state appellate court's rejection of the claim in case number 17-2072 was not contrary to, or an unreasonable application of, *Strickland* or *Hill*.

**IV.**

Petitioner abandoned his claim regarding his guilty plea in case number 17-2073, and his claim regarding trial counsel's performance in case number 17-2073 lacks substantive merit.

Petitioner's challenges to his guilty plea and the assistance of counsel in case number 17-2072 also lack merit, and the state appellate court's rejection of Petitioner's claims in case number 17-2072 was not objectively unreasonable.

Accordingly, it is **ORDERED** that the Habeas Corpus Petition, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a Certificate of Appealability is **DENIED** because reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. Nor would reasonable jurists conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **GRANTED** because Petitioner was permitted to proceed *in forma paupers* in this case, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24 (a)(3)(A).

Dated: May 21, 2021                                              s/Thomas L. Ludington
                                                                 THOMAS L. LUDINGTON
                                                                 United States District Judge